UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 17-cr-00499-PJH-1 |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING MOTION FOR RELEASE ON BAIL PENDING APPEAL** |
| OMAR GUZMAN, | |
| Defendant. | Re: Dkt. No. 84 |

On November 21, 2018, the court held a hearing on the motion of defendant Omar Guzman for release on bail pending appeal. Dkt. no. 81. Guzman was convicted of a single count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) pursuant to a guilty plea and was sentenced to 21 months of imprisonment, 3 years of supervised release, and $100 special assessment on September 5, 2018. He filed a notice of appeal on September 13, 2018, and seeks release on bail pending appeal pursuant to Federal Rule of Criminal Procedure 46(c) and 18 U.S.C. § 3143(b)(1). The government opposes the motion for release pending appeal. Dkt. no. 84. Having considered the relevant legal authority, the parties' papers, the reports of Pretrial Services, the evidence in the record, and the arguments of counsel, the court DENIES the motion for release pending appeal for the reasons stated on the record and summarized below.

**I.    Legal Standard**

The Bail Reform Act provides, at 18 U.S.C. § 3143(b)(1), that a defendant convicted of a non-violent crime shall be detained pending appeal unless the court finds

the following:

1. By clear and convincing evidence, defendant is not likely to flee or pose a danger to the safety of any other person or the community;
2. Appeal is not for the purpose of delay;
3. Appeal raises a substantial question of law or fact; and
4. If that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for new trial of all counts on which imprisonment has been imposed.

*United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985). A substantial question is one that is "novel," "has not been decided by controlling precedent," or is "fairly debatable." *Id.* at 1282 & n.2 (quoting and adopting standard in *United States v. Miller*, 753 F.2d 19, 22-23 (3d Cir. 1985)).

**II. Discussion**

**A. Risk of Flight and Danger to Safety of Another If Released**

Guzman contends that he neither is likely to flee nor poses a danger to the safety of any other person or the community if released pending appeal. However, he fails to satisfy this showing by clear and convincing evidence in light of his criminal history and conduct during pretrial release, as shown by both the government and Pretrial Services:

1. Guzman has a felony conviction for carjacking in 2004, when he placed a semi-automatic handgun against the left side of the victim's neck and demanded money before driving off with the victim's car. Dkt. no. 44 (PSR) ¶ 26.
2. Guzman failed to appear in state court for no proof of insurance, in violation of the Vehicle Code, on February 19, 2013; he later appeared in court on September 6, 2013 and was convicted of failing to provide financial responsibility, and failure to appear after signing citation. PSR ¶ 27. The 10/11/17 Pre-Bail Report also points out that Guzman has 6 outstanding Failures to Appear and 2 outstanding Failures to Pay for traffic related

2

offenses.

3. In 2013, Guzman was convicted of felony evade Peace Officer: Disregard Safety when he led officers on a high speed motorcycle chase. PSR ¶ 29.
4. In 2017, Guzman was convicted of misdemeanor battery on his spouse. PSR ¶ 30.
5. His criminal history indicates that he designated himself as Norteño gang member for incarceration purposes. 10/11/17 Pre-Bail Report.
6. In March 2018, Guzman tested positive for marijuana at the halfway house. 3/21/18 Pretrial Violation Memo. Judge Ryu held a bond hearing on March 29, 2018, and strongly admonished him re: his violation and ordered him not to use any drugs. The court warned Guzman that if he continues to test positive and violates the halfway house rules, and gets terminated from the program, he'll be remanded back in custody. Dkt. no. 30.
7. In June 2018, Guzman asked to leave the halfway house to reside in the community; both the government and Pretrial Services opposed this modification. Judge Ryu denied the request on July 3, 2018, but permitted him to leave the halfway house for 5 hours on Saturdays and 8 hours on Sundays. Dkt. no. 51.
8. While he was on pretrial supervision, on August 14, 2018, Pretrial Services was notified by Geogroup Oakland Residential Reentry Center (or halfway house) director, Matthew Lange, that the defendant was observed "pouring a liquid from a container with a white cap into the urine cup. When staff asked him for the container, he did not turn it over." He advised that staff searched the defendant but could not locate the container. They then searched his room and found two medicine bottles with white caps and which smelled of urine hidden in the toilet reservoir. They also found a "vap pen" and a receipt in Mr. Guzman's name for purchase of THC products. Additionally, staff observed that the window screen in the room was cut and

3

damaged, which they noted was the third time this has occurred since the defendant occupied the room. Dkt. no. 63 (Form 8) ¶ 1.

9. Halfway house director Matthew Lange advised that a few minutes after the discovery of the above-described items, at approximately 10:00 a.m, the defendant packed his bags and walked out of the facility stating he was "not going to wait around for the U.S. Marshals to come get (him)." Form 8 ¶ 2. Guzman refers to this as a temporary lapse in judgment, given that for many months during pretrial proceedings, he reported to pretrial, attended every court date, was briefly employed, maintained union requirements and made curfews. After leaving the halfway house, he went to the union office to terminate his apprenticeship, tried to call his pretrial officer, called counsel, and surrendered about 3 hours after leaving the halfway house.

10. Guzman asserts that he obeyed the rules of the halfway house, Mot. at 5, but the government points out that he violated the rules at least a couple times: possessing contraband cigarettes and testing positive for drugs. In August 2018 when he absconded, he was caught attempting to fake a drug test, suspected of cutting holes in the window screen, found with marijuana paraphernalia, and left the halfway house without permission. At the August 15, 2018, revocation hearing, Judge Ryu addressed defense counsel's characterization of the drug test falsification as an aberrant mistake, saying "I don't consider it a slip-up. I think that's a gross minimization of the record here, given the number of times Mr. Guzman's been in front of me on bail." Opp. at 3 (citing 8/15/18 audio at 12:28).

In light of this record, Guzman has not shown by clear and convincing evidence that he is not likely to flee. Guzman's recent revocation of pretrial release for absconding from the halfway house, as well as two previous violations of halfway house rules, his prior felony conviction for Evade Peace Officer: Disregard Safety and numerous traffic violation Failures to Appear, suggest that he presents a likelihood of non-appearance or flight.

4

The mitigating factors in his record, such as lifelong residence in Northern California, employment history, lack of a passport, the lack of recent international travel, and the willingness of defendant's family members to co-sign an unsecured bond on the defendant's behalf, do not outweigh the factors indicating risk of flight.

Guzman suggests that he does not pose a safety risk, noting that during his time at the halfway house, he never threatened anyone, possessed a weapon, or jeopardized safety. Dkt. no. 85 (Reply) at 4-5. However, his criminal history and background, which includes felony carjacking, evading arrest, gang membership, and domestic violence, suggest that he poses a danger to the safety of another person or the community if released. Though Guzman's carjacking conviction is remote in time and holds limited weight, his more recent criminal conduct raises significant concerns that he would pose a danger to others if he were to be released pending appeal. In particular, Guzman's recent domestic violence conviction included a prohibition of the possession of any firearms and he was on two grants of probation at the time of the instant offense, indicating he is not amenable to community supervision. 10/12/17 Pretrial Services Addendum Report. His short history under supervision at the halfway house does not outweigh his history of violent and criminal conduct by clear and convincing evidence.

### B. No Purpose of Delay

As to the second *Handy* requirement for granting bail pending appeal, it is undisputed that Guzman's appeal is not for purpose of delay. But for the reasons discussed above, Guzman fails to satisfy the first *Handy* requirement to show that he is neither likely to flee nor poses a danger to the safety of another if released.

### C. Substantial Question

Guzman asserts that his appeal raises a substantial question of law: whether federal and local authorities may prosecute a defendant for the same crime under the double jeopardy clause of the Sixth Amendment. Guzman's appeal challenges the long-standing dual sovereign exception that recognizes that state and federal governments may prosecute similar conduct without violating the Double Jeopardy Clause. *See*

1 *Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863, 1871 (2016) ("the States are separate
2 sovereigns from the Federal Government (and from one another)") (citing *Abbate v.*
3 *United States*, 359 U.S. 187, 195 (1959); *Bartkus v. Illinois*, 359 U.S. 121, 132–137
4 (1959); *Heath v. Alabama*, 474 U.S. 82, 88 (1985)). The Supreme Court granted
5 certiorari to consider this question in *Gamble v. United States,* No. 17-646: Whether the
6 Court should overrule the "separate sovereigns" exception to the Double Jeopardy
7 Clause.

8 Guzman contends that his appeal, challenging the federal felon in possession
9 prosecution for conduct that was prosecuted by the state court, raises a substantial
10 question in light of the Supreme Court's decision to review the dual sovereign doctrine in
11 *Gamble.* In *Gamble,* as here, the defendant was indicted in district court for violation of
12 18 U.S.C. § 922(g)(1), after he was convicted in Alabama state court for the same
13 conduct as a prohibited person in violation of a firearm in violation of state law. The
14 Eleventh Circuit affirmed the federal conviction in the Southern District of Alabama,
15 stating "unless and until the Supreme Court overturns *Abbate*, the double jeopardy claim
16 must fail based on the dual sovereignty doctrine." *United States v. Gamble*, 694 Fed.
17 Appx. 750, 751 (11th Cir. 2017), *cert. granted*, 138 S. Ct. 2707 (2018).

18 As Guzman points out, there is no Ninth Circuit authority addressing the question
19 whether the Supreme Court's grant of a writ of certiorari indicates the presence of a
20 "substantial question" under the Bail Reform Act. The fact that there is binding Supreme
21 Court precedent on the issue raised in Guzman's appeal forecloses a finding of a novel,
22 fairly debatable or fairly doubtful issue, or that the writ of certiorari granted in *Gamble*, in
23 and of itself, indicates a substantial question. *See Handy*, 761 F.2d at 1282-83.

### D. Favorable Ruling Is Likely to Result in Reversal

25 With respect to the fourth *Handy* prong, the parties do not genuinely dispute that
26 the issue on appeal, if determined favorably, is likely to result in reversal. A favorable
27 outcome on appeal, which would be dependent on the Supreme Court setting aside stare
28 decisis to overrule the long-standing dual sovereignty doctrine in *Gamble,* would certainly

6

result in Guzman's conviction being reversed. However, Guzman fails to make the requisite showing that his appeal, based solely on the grant of certiorari in *Gamble,* raises a substantial question of law.

### III. Conclusion

For the reasons stated above and set forth in the record, defendant's motion for release on bail pending appeal is DENIED.

**IT IS SO ORDERED.**

Dated: November 21, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge